IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN EVANKO, ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 11-1099 |
| ) | Magistrate Judge CYNTHIA REED EDDY |
| WCDI, LLC; CURTIS J. BROWN; 3205 ) | |
| HOLDINGS, LLC; GARY M STOTZ; HT ) | |
| CONSULTING, LLC; MARSTON ) | |
| INVESTMENTS, INC., THE HAROLD ) | |
| MARSTON ESTATE; EMILY MARSTON ;) | |
| MICKELLE MARSTON; THE ESTATE ) | |
| OF RON PICCOLO; ANTHONY ) | |
| PETZITILLO, ) | |
| ) | |
|     Defendants. ) | |

MEMORANDUM OPINION AND ORDER

This diversity matter was originally filed in the Court of Common Pleas of Allegheny County and was removed to this Court. John Evanko, ("Evanko" or "the Plaintiff), a Pennsylvania resident, alleges in his Amended Complaint [ECF No. 14] liability on the part WCDI, LLC ("WCDI"), a corporation with its principal place of business in Utah; Curtis Brown ("Brown"), an individual residing in Utah; HT Consulting, LLC ("HTC"), a corporation with its principal place of business in New Jersey; 3325 Holdings ('3325"), a corporation with its principal place of business in Florida; Gary Stotz ("Stotz"), an individual residing in Florida; the Estate of Ron Piccolo, a Utah entity; Marston Investments, Inc. ("Marston Investments"); a corporation with its principal place of business in Utah; Emily Marston ("E. Marston"), an individual residing in Utah; Mikelle Marston ("M. Marston"), an individual residing in Florida, and legal representative of the Harold Marston estate being probated in Utah; and the Harold Marston Estate ("H.M. Estate") an entity subject to probate in Utah.

According to Evanko, these Defendants engaged in fraud in the inducement, fraud, conversion, breach of express and implied contract, and violation of unfair trade practice and consumer protection laws when they refused to return to Evanko $75,000 that the parties, who were pursuing a business venture, had agreed would be treated as a loan. Pending is the Defendants' Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, to transfer this matter pursuant to the venue provisions set out in 28 U.S.C. § 1406(a). [ECF No. 20]. The Court will deny the Motion to Dismiss, and grant the Motion to Transfer Venue.

**Background**

In the First Amended Complaint, Plaintiff alleges that while he was in Pennsylvania in 2009, he received a telephone call from Stotz, who asked whether Evanko was interested in purchasing a twenty percent ($150,000) interest in WCDI, a Company engaged in fabricating and marketing a "TIPIT" waste/commodities handling machine. [ECF No. 14 at ¶ 16]. Evanko was told that he must act quickly, because the Defendants owed money to a third party, Taylor Machine Works ("Taylor"), and if they could not raise the $75,000 immediately, work on the TIPIT prototype would halt. Evanko was assured that his advance would be applied to the price of his ownership interest, provided that a business agreement could be closed. Id. If an agreement could not be reached, the advance would be considered a loan, and refunded.

After meeting with Stotz and Marston, the machine's inventor, in Mississippi, Evanko agreed to advance the $75,000. [Id. at ¶ 17]. Plaintiff wired the funds to Taylor in Mississippi, hired counsel, and began work on the agreement. Approximately two weeks into the process, Marston died. [Id.]. Negotiations continued with Marston's wife and daughter substituting for him. As part of the process, Evanko met with the Defendants in Salt Lake City, Utah where they

were able successfully to resolve core matters including the selection of officers and directors and WCDI's retention of the TIPIT patents. [Id. at ¶ 21].

At an unspecified later date, the parties met in Mississippi to discuss finalizing the business plan and to observe the finished TIPIT prototype. [Id. at ¶23]. At that meeting, a dispute arose regarding transfer of ownership of the patents. Due to family disagreements, Marston's wife and daughter no longer wanted to part with their portion. Piccolo committed to contribute his fifty percent holding. [Id.].

"Over the next few weeks the agreement was drafted, but not executed. During this time, a governance issue arose over the voting rights and the small percentage [of the business given to] Brown in exchange for legal work performed on behalf of . . . Marston." [Id. at ¶ 24]. The equable relationship among the parties devolved. Piccollo and Stotz began to argue with E. and M. Marston. Plaintiff began to get cold feet. Piccollo and Stotz tried to smooth matters, reassuring Plaintiff that despite the obstacles, disagreements with the Marston women could be overcome by outvoting them. Plaintiff was unmollified; he worried that this approach would result in litigation against WCDI, and expose him to personal liability. [Id. at ¶ 25]. He thus "refused to execute the agreement." [Id.].

Abandoning the venture, Evanko asked to have his money returned, but was ignored by Defendants who attempted to change the conditions governing the refund of his investment. [Id. at ¶26]. "Defendants have not returned [the] money as they all promised they would, and instead have converted the machine for their own use, sole benefit and unjust enrichment. Plaintiff's repeated requests regarding the current status of the machine, its use, sale and or rental have also been ignored by all Defendants." [Id.]. According to Evanko, instead of honoring their words and their promises, defendants now claim to have had a different agreement than what was

"promised to entice and induce Plaintiff to fund the construction of the machine at issue." [Id. at ¶ 29].

**DISCUSSION**

**Personal Jurisdiction Over the Defendants**

    **General Jurisdiction**

The Court turns first to Defendants' argument that they are not subject to the personal jurisdiction in Pennsylvania. Under Fed. R. Civ. P. 4(e),[1] a federal court may assert personal jurisdiction over a non-resident defendant to the extent allowed by the law of the state in which the action is brought. See Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Pennsylvania authorizes the exercise of long-arm jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Con. Stat. Ann. § 5322(a)(4); Renner v. Lanard Toys Ltd., 33 F.3d 277, 279 (3d Cir. 1990); Farino, 960 F.2d at 1221. Accordingly, the statute is restricted only by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Kubik v. Letteri, 614 A.2d 1110, 1113-14 (Pa. 1992). A court should not, however, presume that jurisdiction is proper merely because the requirements of a state's long-arm statue have been satisfied. Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998).

Once a jurisdictional issue has been raised, the plaintiff bears the burden of establishing contacts sufficient to support the court's exercise of personal jurisdiction. See Marten v.

---

[1] Federal Rule of Civil Procedure 4(e)1 provides in relevant part:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or incompetent person, may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located.

Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007); Provident Nat'l Bank v. California Fed. Sav. & Loan Assn, 819 F.2d 434, 437 (3d Cir. 1987). Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction, and the reviewing court must interpret all facts and allegations in a light most favorable to the plaintiff. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

The Plaintiff may meet his burden with respect to jurisdiction by showing that a defendant has had either general or specific contacts with the forum state. "A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the foreign state." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). When a state has general jurisdiction over a party, it may exercise jurisdiction based over any claim, even those unrelated to a particular contact with the state. Farino, 960 F.2d at 1221. The threshold showing required to establish general jurisdiction is high. Reliance Steel Prods Co. v. Watson, Ess, Marshall & Engas, 675 F.2d 587, 589 (3d Cir. 1982). Having carefully reviewed the record, the Court finds that the Plaintiff has failed to show that any of the Defendants' contacts with Pennsylvania have been consistent and systematic so as to establish general personal jurisdiction

**Specific Jurisdiction**

    **a.    Minimum Contacts**

Determining whether specific jurisdiction exists involves a three-part inquiry.[2] First, the court must consult the state's long-arm statute to ensure that it permits the exercise of personal

---

[2] Some cases decided by the United States Court of Appeals for the Third Circuit have utilized a two - part test, noting that the third prong - a determination of whether exercising jurisdiction would comport with notions of fair play and substantial justice - is discretionary. See e.g., Pennzoil, 149 F.3d at 201. However, the third prong is almost universally applied, and has even been referred to as "mandatory." See, e.g., Mesalic v. Fiberfloat Corp, 897 F.2d 696,

jurisdiction. Next, the plaintiff must show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 258-59 (3d Cir.1998) (citing Burger King v. Rudzewicz, 471 U.S. 462, 474 (1985)). In order to establish specific jurisdiction, the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414. Finally, a reviewing court may consider additional factors to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 316 (1945)).

In order for a court analyzing the first prong of the specific jurisdiction analysis to find that sufficient minimum contacts warrant assertion of personal jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Farino, 960 F.2d at 1221 (quoting Hanson v. Denckla, 357 U.S. 235, 253, (1958)). These acts must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286, 297 (1980). This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are "random, fortuitous," or "attenuated," or that result from the unilateral activity of another party or a third person. Burger King, 471 U.S. at 475 (citations omitted).

In contract cases, courts are directed to determine whether the defendants "reach[ed] out beyond [their] state [to] create continuing relationships and obligations with citizens of another

---

701 (3d Cir. 1990) ("Having determined that there were sufficient minimum contacts, we must determine whether the assertion of personal jurisdiction accords with notions of 'fair play and substantial justice.'") (citations omitted). See also O'Connor v. Sandy Land Hotel, Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) ("inquiring as to whether specific jurisdiction exists has three parts.").

state." Gen. Elec. Co., 270 F.3d at 150. This outreach must be significant and, typically, ongoing. "'[I]nformational communications in furtherance of [a contract between a resident and a nonresident] [do] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" Remick v. Manfredy, 238 F.3d 248, 254 (3d Cir. 2001) (quoting Vetrotex Certainteed Corp. v. Consol Fiber Glass Prod. Co, 75 F.3d 147, 152 (3d Cir. 1996) (alterations in original)). In Vetrotex, the United States Court of Appeals described circumstances where contract negotiations between residents of different states were insufficient to support a valid exercise of personal jurisdiction over the nonresident defendant: "For instance this is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract. Nor is this a case where the defendant sent any payments to the plaintiff in the forum state, or where the defendant engaged in extensive post sale contacts with the plaintiff in the forum state." Id., 75 F.3d at 152-53.

In this matter, the facts alleged regarding the claims on which this suit is based are similarly deficient for purposes of specific jurisdiction. No background regarding prior business dealings between the Defendants and Evanko is provided. The Amended Complaint says only that Evanko "was approached in Pennsylvania in 2009 by . . . telephone to purchase an ownership interest in WCDI['s] *first project.*" [ECF No.14 ¶16] (emphasis added). It was during this conversation that the rudiments of the deal were discussed, and Plaintiff agreed to meet with Stotz and Marston in Mississippi "to review the plan and markets." [Id. at ¶17]. At that Mississippi meeting, Defendants explained their need for an immediate infusion of cash. [Id. at 18].[3]

---

[3] As was the case in Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 555 (3d Cir. 1993), "There is no indication that [the Defendants in this matter] requested that [Plaintiff's] check be drawn on a [Pennsylvania bank] or that there was any negotiation . . . with

7

Evanko states that After Marston's funeral, Evanko and the Defendants "continued to work on the agreement with their respective attorneys." [Id. at ¶ 20]. Plaintiff does not specify the location of this work or identify the attorneys. During the course of negotiations, Evanko traveled to Utah to discuss substantive aspects of the agreement including the selection of officers and directors, what was needed to complete the agreement, and who would own the TIPIT patents. [Id. at ¶21]. Plaintiff and "all Defendants" met again in Mississippi to finalize the agreement and to see a demonstration of the prototype of the machine which was then finished." [Id. at 22]. On November 1, 2010 Plaintiff received a letter from WCDI proposing to modify the tentative agreement. [Id. at 26]. Evanko rejected this proposal, demanded the return of his money, and filed this action.

The only definitive contacts between Defendants and the state of Pennsylvania are one telephone call from Stotz seeking Evanko's participation in a joint venture that was largely negotiated elsewhere, and one letter from WCDI regarding suggested contract modifications. The suit arises from alleged promises made and breached elsewhere. The Court, having reviewed the Amended Complaint, the parties' briefs, and having heard oral argument on this issue, finds that the contacts set out by Evanko are insufficient to establish specific jurisdiction.

    **b.**    **Claim Arising From or Relating to Contact**

Under the second prong of the specific jurisdiction inquiry, it is necessary to determine whether the Plaintiff's claim can be said to "arise out of or relate to" at least one of his contacts with the Western District of Pennsylvania. O'Connor, 496 F.3d at 318 (citing Helicopteros, 466 U.S. at 414). [A]t least one contact on the part of the Defendant must have given rise or related

---

respect to the location or identity of the bank . . . . Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence." Id. Moreover, no part of Evanko's claim arises from the check's point of origin.

8

to Plaintiff's's claim. Id. at 321. Each time an out-of-state resident has purposeful contact with a particular forum, the forum state's laws "extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits." Id. at 323. The function of the relatedness requirement is "to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." Id. "It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiff's claims." Id. at 324.

Even the most liberal reading of the Amended Complaint does not establish a connection between a legal obligation arising in Pennsylvania and the substance of Evanko's claims The only meaningful links between Plaintiff's claims and the legal obligations on which they were based were forged in Utah or Mississippi; Pennsylvania's connection with the claim, according to representations made by Defendants is minimal and will not support the exercise of specific personal jurisdiction.[4]

**VENUE**

The fact that the District Court for the Western District of Pennsylvania lacks jurisdiction over this matter does not compel dismissal. There is also an issue of venue.[5] Defendants

---

[4] Because the facts provided by Evanko are insufficient – individually and collectively – to make out a prima facie case for personal jurisdiction over the Defendants, the Court need not determine whether Defendants have shown that a finding of personal jurisdiction in this District would violate notions of "fair play and substantial justice."

[5] Venue based solely on diversity of citizenship is governed by the provisions of 28 U.S.C. §1391(a), which reads:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

recognize this principle and ask that 28 §1406(a) be invoked to transfer this action to a district having personal jurisdiction over the defendants. [6] See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465-66 (1962) (articulating rule that court may transfer venue under § 1406(a) even where it lacks jurisdiction over the defendant). See also Lafferty v. St. Riel, 495 F.3d 72, 80 (3d Cir. 2007) (recognizing Goldlawr rule).

This interpretation of §1206(a) parallels the treatment of transfers authorized by 28 U.S.C. § 1631, which reads in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . . , and the action . . . shall proceed as if it had been filed in . . . the court from which it is transferred.

Id. Courts in the Third Circuit have relied on section 1631 to avoid dismissing a case where there is a lack of jurisdiction in the original forum, despite the Supreme Court's clarification in Goldlawr that the same result obtains under § 1406(a). See Exton v. Our Farm, Inc., 943 F. Supp. 432, 441 (D.N.J. 1996) (finding that reliance on § 1631 made it unnecessary to reach

---

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

[6] Section 1404(a), the alternate venue statute permitting transfer of a cause of action, does not apply to the facts of this case because venue is not proper in this district. According to this section: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In order for this section to apply, venue must be proper in both the original and transferee districts. See Jolly v. Faucett, Civil Action No. 06-3286, 2007 WL 137833 at * 2 (E.D. Pa. Jan. 16, 2007) (citing Jumara v. State Farm Ins. Co,, 55 F.3d 873, 879 (3d Cir. 1995)).

whether an action should be dismissed or transferred pursuant to § 1406(a)). [7] See also Modern Mailers, Inc., v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1055-56 1994) (recognizing that transfer for lack of personal jurisdiction may be accomplished under § 1631 or § 1406(a)).

Transfer to a district with jurisdiction where venue is proper is required where the plaintiff consents. This prevents the plaintiff from losing "its day in court simply because it filed the claim in the wrong district." Id. at 1056. "Oftentimes, plaintiff makes a motion to transfer as an alternative to complete dismissal if the court fails to find jurisdiction over the defendant." Id. at 1055. At oral argument, Evanko made clear that he prefers transfer to dismissal due to concerns relating to the governing statute of limitations.

**To Which District Should This Matter be Transferred?**

The Court's focus here is on the venue provisions of 28 U.S.C. §1391(a)(2). Seven of the eleven Defendants reside in Utah, two in New Jersey, and the last reside in Florida. Other than that, the Amended Complaint tells the Court little about salient events leading up to this litigation, including which of the Defendants' actions form the basis for the fraud claim. In his brief opposing Defendants' Motion [ECF No. 10], Plaintiff insists, without factual support, that the majority of negotiations and transactions relating to the subject of this litigation took place in Pennsylvania." [Id. at 2]. He then states that if the Court finds that transfer is in order, the only other venue substantially related to this matter lies in the United States District Court for the Northern District of Mississippi. Evanko reasons that the third party beneficiary of his payment on behalf of WCDI is located in Mississippi, and if the Court determines that venue is not appropriate in Pennsylvania, Mississippi is the only reasonable alternative." Id. at 7. Defendants contend that, in the interest of convenience for most of the witnesses, and in light of Evanko's

---

[7]According to Moore, "the concepts of venue and personal jurisdiction [have become] essentially coextensive." 17A Moore's Federal Practice, § 111.02 (Matthew Bender 3d ed. 2006).

11

visit to and participation in negotiations in Utah, litigation there is appropriate and preferable. Under 28 U.S.C. § 1406(a), a district court, upon a motion or sua sponte, may transfer a case to a court of proper jurisdiction when such a transfer is in the interest of justice. A district court has "broad discretion in deciding whether to order a transfer." Caldwell v. Palmetto State Sav. Bank of S.C., 811 F.2d 916, 919 (5th Cir.1987). In this situation, we find that this action could properly have been brought in Utah at the time it was filed, and that transferring – rather than dismissing – this case best serves the interest of justice. The Court will deny the motion to dismiss, and grant Defendants' request that this matter be transferred to the Central District of Utah. An appropriate Order follows.

### ORDER

For the foregoing reasons, it is

NOW, this 6th day of February 2012,

ORDERED that insofar as the Defendants' Motion [ECF No. 20] seeks to dismiss this matter for lack of personal jurisdiction and lack of proper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3), it is DENIED. Insofar as the Defendants' Motion [ECF No. 20] requests, in the alternative, that that this matter be transferred to the United States District Court for the Central District of Utah pursuant to 28 U.S.C. § 1406(a), it is GRANTED.

The Court instructs the Clerk of this Court to transfer this case FORTHWITH to the United States District Court for the Central District of Utah, and to mark this case closed.

/s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

cc: All Counsel of Record Via Notice of Electronic Filing